**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-01280-CMA-MEH

GEORGE CHRISTOPHER ASH,

Plaintiff,

v.

AURORA PUBLIC SCHOOLS,

Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Aurora Public Schools' Motion for Summary Judgment. (Doc. # 49.) Plaintiff George Ash filed a Response (Doc. # 56) on February 1, 2020, and Defendant filed a Reply (Doc. # 59) on February 18, 2020. For the following reasons, the Court grants Defendant's Motion.

## I.   BACKGROUND

This is an employment discrimination case. Plaintiff is an African American male with several disabilities.[1] (Doc. # 39 at 4–5.) Defendant hired Plaintiff to teach 6th grade Social Studies at East Middle School ("the School") for the 2014–2015 school year. (Doc. # 56 at 2.) The School is a Title I school: many of the students come from impoverished backgrounds, are traumatized, and lack stability in their lives. (Doc. # 49-1 at 24.) Defendant evaluated Plaintiff as "Effective and Proficient" for the 2014–2015

---

[1] Plaintiff's disabilities include "[d]iabetes, a torn MCL, nerve damage to the left side of [the] body, . . . [a] head injury from a car accident [and] a disabling laser injury to [the] eyes . . . ." (Doc. # 56-1 at 118.)

school year (Doc. # 56 at 2) and as "Effective" for the 2015–2016 school year (Doc. # 56-1 at 103).

In July 2015, there was a change of management at the School when Dr. Biaze Houston was hired as principal. (Doc. # 56 at 2.) Dr. Houston felt there was a lack of respect between the students and the staff at the School and, with the assistance of Mr. Frutoso Chavez, who was hired as assistant principal in 2016, he implemented a restorative approach to student discipline.[2]

In November 2015, Plaintiff was injured in a car accident and took time off to recover. (Doc. # 39 at 4.) He exhausted his sick leave and was not paid for two of the weeks he was out. (Doc. # 56 at 3.) In August 2016, Plaintiff was diagnosed with type II diabetes (Doc. # 56-1 at 4) and between then and October 2016, he took time off work for doctor and lab visits related to the diabetes (Doc. # 39 at 4). Subsequently, Mr. Chavez emailed Plaintiff requesting documentation for any future paid health leave. (Doc. # 49-1 at 91.) In November 2016, Plaintiff unsuccessfully applied for benefits from Defendant's Health Leave Bank ("HLB"). (Doc. # 56 at 3.)

During the 2016–2017 school year, Plaintiff was subjected to a variety of student misconduct: racial slurs; derogatory comments and drawings regarding race, sexual orientation, and gender; threats; and physical attacks. (*Id.* at 4.) Plaintiff raised his concerns about the student conduct with the School's management. (*Id.* at 5.) As part of the School's restorative practices, Mr. Chavez asked Plaintiff to engage in restorative conferences with some of the students involved in the misconduct. (*Id.* at 9). However,

---

[2] Restorative approaches, also known as Positive Behavior Intervention and Supports, focus on addressing the underlying reasons for hurtful or offensive behaviors rather than punishment or incentivization, and include restorative conferences between student and teacher. *See* (Doc. # 49-1 at 14–15).

Plaintiff was generally unwilling to engage in the restorative practices and frequently failed to attend restorative conferences with students. *See, e.g.*, (Doc. # 49-1 at 78).

The students that Plaintiff specifically identified as being involved in inappropriate conduct were sanctioned by suspension, faced expulsion, or were transferred to another class. (*Id.* at 69–71; Doc. # 60 at 3.) Also during the 2016–2017 school year, Mr. Chavez repeatedly addressed with Plaintiff numerous instances of Plaintiff's unprofessional conduct. *See, e.g.*, (Doc. # 49-1 at 100). During Plaintiff's mid-year review with Mr. Chavez, Plaintiff was put on notice that, if there were not substantial changes to his conduct, he might not be renewed for the 2017–2018 school year. *See* (*id.* at 68).

In February 2017, Plaintiff filed a grievance with Defendant and the Aurora Education Association describing both the behavior of the students in his class and allegedly discriminatory acts by Dr. Houston and Mr. Chavez. (Doc. # 39 at 6.) On March 13, 2017, Plaintiff was informed by Dr. Houston and Mr. Chavez that he was not going to be renewed for the next school year because of his performance issues. (*Id.* at 6–7.) On April 26, 2017, Plaintiff suffered a student-inflicted eye injury. (*Id.* at 5.) After the non-renewal discussion between Mr. Chavez and Plaintiff in March 2017, Plaintiff became uncommunicative with the School's management and consistently failed to meet various professional obligations, including attending his end-of-year evaluative conference. *See* (Doc. # 60 at 28–48).

## II.   LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). When reviewing motions for summary judgment, a court may not resolve issues of credibility, *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1251 (10th Cir. 2013), and must view the evidence—including all reasonably drawn inferences—in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence, and "[u]nsubstantiated allegations carry no probative weight." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citations omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). To meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its

pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (citation omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citation omitted). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249 (citations omitted).

Discrimination and retaliation claims under Title VII and § 1981 can be analyzed using either the mixed motives framework or the three-step *McDonnell Douglas*[3] framework. *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 911 (10th Cir. 2011). To prevail under the mixed motives framework a plaintiff must show that an employment action of the defendant "was the product of a mixture of legitimate and illegitimate motives." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub.L. No. 102–166, § 107(a), 105 Stat. 1074.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

(10th Cir. 2005). In the summary judgment context, "a plaintiff initially must raise a genuine issue of material fact on each element of the *prima facie* case." *Id.* If such a case is established, "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *Id*. If the defendant offers a legitimate reason for its decision, "the burden shifts back to [the] plaintiff to show a genuine issue of material fact as to whether [the] defendant's reason for the discharge is pretextual." *Id*. The *prima facie* case varies depending on the type of adverse action the employee alleges was discriminatory. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) ("[T]he articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged.")).

## III.   DISCUSSION

Plaintiff alleges that Defendant: (1) discriminated against him on the basis of his race, gender, or sexual orientation by forcing him to work in a hostile work environment and effectively terminating his employment; (2) discriminated against him on the basis of his disability status; and (3) retaliated against him for engaging in protected opposition to the alleged discrimination. The Court analyzes these claims using the *McDonnell Douglas* framework.[4]

---

[4] Plaintiff claims this is a mixed motives case. Pursuant to the mixed motives framework, the plaintiff "must present evidence 'that directly shows that [discrimination] played a motivating part in the employment decision at issue.'" *Hysten v. Burlington N. Santa Fe Ry. Co.*, No. 08-2179-EFM, 2009 WL 10675644, at *15 (D. Kan. Oct. 8, 2009) (alteration in original) (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008)), *aff'd*, 415 F. App'x 897 (10th Cir. 2011). Evidence directly showing discrimination may be direct or circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98–102 (2003). However, circumstantial evidence must relate directly to the employer's discriminatory motive. *Hysten*, 2009 WL 10675644, at *15 (citing *Fye*, 516 F.3d at 1226). Plaintiff claims Defendant's restorative policy is direct evidence of discrimination; however, the policy is not discriminatory on its face and is, therefore, not direct

A.      **PRIMA FACIE CASE FOR HOSTILE WORK ENVIRONMENT**

1.      Applicable Law

Although Title VII makes no explicit mention of hostile work environment, "a

victim of a racially hostile work environment may nevertheless bring a cause of action

under Title VII." *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1156 (10th Cir. 2008)

(quoting *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000)).

Exposure to a hostile work environment is established when: (1) a plaintiff is a

member of a protected group; (2) a plaintiff has been subject to unwelcome

harassment; (3) the harassment was based on the protected characteristic; and (4) the

harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of

the plaintiff's employment and created an abusive working environment. *Asebedo v.*

*Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014). "Hostile work environment

harassment arises when the alleged discriminatory conduct 'has the purpose or effect of

unreasonably interfering with an individual's work performance or creating an

intimidating, hostile, or offensive working environment.'" *Hicks v. Gates Rubber Co.*, 833

F.2d 1406, 1413 (10th Cir. 1987) (quoting 29 C.F.R. § 1604.11(a)(3) (1986)). "Isolated

or trivial episodes of harassment are insufficient" to create a pervasively abusive

environment, *Honeycutt v. Safeway, Inc.*, 475 F. Supp. 2d 1063, 1075 (D. Colo. 2007);

rather, "there must be a steady barrage of opprobrious [discriminatory] comments,"

*Semsroth v. City of Wichita*, 304 F. App'x 707, 722 (10th Cir. 2008).

---

evidence of discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121–22
(1985). Plaintiff also fails to present circumstantial evidence suggesting Defendant had a
discriminatory motive. Therefore, the mixed motives framework is not applicable.

When determining whether an environment is hostile, courts consider the entirety of the "circumstances[,] including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1219 (10th Cir. 2003). "[A] [racially/sexually] objectionable environment must be both objectively and subjectively offensive . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

A hostile work environment can be created when students harass teachers. *See Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1017 (9th Cir. 2018) (students' harassment of their teacher contributed to hostile work environment). However, an employer-defendant is liable for a hostile work environment only if it knew, or should have known, about the hostile work environment and neglected to take corrective action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 769–70 (1998) (Scalia & Thomas, JJ., dissenting); *see also Chapman v. Carmike Cinemas*, 307 F. App'x 164, 171 (10th Cir. 2009) (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)) ("Under this theory, [plaintiff] was required to prove . . . that [employer] had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment.").

2.   Analysis

Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim because, although Plaintiff subjectively believes the alleged harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of his employment, objectively, the evidence fails to support his argument that there is a

genuine dispute of material fact regarding Defendant's creation of a work environment in which harassment was severe or pervasive.

First, Plaintiff argues that his harassment by students, combined with Defendant's failure to remedy the harassment, created a severe or pervasively hostile work environment. (Doc. # 56 at 9–10.) Plaintiff claims that the student conduct ostensibly falls under Defendant's policy governing workplace harassment, which provides: "[t]he district shall take appropriate action to promptly and impartially investigate allegations of unlawful discrimination and harassment, to end unlawful behavior, to prevent the recurrence of such behavior . . . ." (Doc. # 56-1 at 52.) However, Defendant sanctioned every student that Plaintiff identified as engaging in harassing behavior by suspending them or transferring them to another class. (Doc. # 49-1 at 70–71; Doc. # 60 at 3.) Defendant also contacted at least one of the students' parents about the student's conduct (Doc. # 49 at 8; *see also* Doc. # 49-1 at 71–72, 74), scheduled restorative conferences between Plaintiff and the students (Doc. # 49 at 8; *see also* Doc # 49-1 at 75–80), provided rooms where the offending students could take time out of class to calm down and reflect on their behavior, and routinely sent security or Mr. Chavez to Plaintiff's classroom to remove disruptive students (Doc. # 49-1 at 28). Therefore, Defendant met its obligation to take remedial action that it calculated would end Plaintiff's alleged harassment. *Burlington Indus., Inc.*, 524 U.S. at 771–72.

Plaintiff further argues that Defendant's response to the harassing student behavior was imprompt. (Doc. # 56 at 14.) However, any delay in Defendant's taking action is attributable to Plaintiff's own delay in engaging with Defendant's restorative mechanisms for handling student misconduct. (Doc. # 49-1 at 27–28, 78.) Plaintiff's

other generalized allegations of student harassment are not supported by specific reference to the record and do not, therefore, create a genuine dispute of material fact. *See Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009) ("A plaintiff's subjective beliefs . . . without facts to back up those beliefs, are not sufficient to create a genuine issue of fact.").

Next, Plaintiff argues that Defendant's requirement that he engage in restorative conferences with the harassing students created a hostile work environment. (Doc. # 56 at 9–10.) Specifically, Plaintiff claims that restorative conferences are ineffective, that Defendant's restorative policy is discriminatory, and that enforcement of the policy perpetuated the hostile work environment he was subject to. (*Id.* at 19.) First, as noted above, *see* Discussion *supra* n.3, the Court finds that the restorative policy of Defendant is not facially discriminatory. Second, Plaintiff fails to direct the Court to any evidence supporting these claims; rather, he relies solely on his own subjective beliefs to reach his conclusions. Those beliefs are insufficient to create a genuine dispute of material fact. *See Nielander*, 582 F.3d at 1165.

Plaintiff also claims that he was "insulted, threatened, and bullied by [Mr. Chavez]" during a visit by Mr. Chavez to his classroom on January 30, 2017. (Doc. # 56 at 9; Doc. # 49-1 at 64.) Mr. Chavez made the visit to Plaintiff's classroom to discuss Plaintiff's ongoing delay of a restorative conference that was required for a student to be transferred out of Plaintiff's class per his request. (Doc. # 49-1 at 46.) Plaintiff contends that after Mr. Chavez left, he returned a few minutes later and, in front of students, "forcefully said, 'You will have the meeting.'" (Doc. # 56 at 14.)

Although Plaintiff claims his sensibilities were offended by the interaction with Mr. Chavez during the classroom visit, Title VII does not create a "general civility code." *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Rather, the standard for establishing a hostile work environment is intended to "filter out complaints attacking the ordinary tribulations of the workplace . . . ." *Id.* (citations omitted). "Discourtesy or rudeness should not be confused with racial harassment . . . [n]on racial statements, consisting of reprimands, belittling, or demeaning tones, negative comments, and even verbal insults are not actionable under Title VII." *Chung v. El Paso Cty./Colo. Springs Sch. Dist. #11*, 115 F. Supp. 3d 1242, 1256 (D. Colo. 2015), *aff'd sub nom. Chung v. El Paso Sch. Dist. #11*, 659 F. App'x 953 (10th Cir. 2016). Regardless of whether Plaintiff felt humiliated, insulted, or bullied when Mr. Chavez confronted him in front of the students in his classroom, Plaintiff presents no evidence that Mr. Chavez's conduct or statements were motivated by Plaintiff's race, gender, or sexual orientation.

In summary, Plaintiff has failed to produce adequate evidence to establish a genuine dispute of material fact regarding whether Defendant created an environment where "harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment . . . ." *Asebedo*, 559 F. App'x at 670. Accordingly, because Plaintiff has failed to show a *prima facie* case of a hostile work environment, summary judgment for Defendant on Plaintiff's hostile work environment claim is appropriate.

**B.     LEGITIMATE REASON VERSUS PRETEXT ANALYSIS**

The Court assumes, without deciding, that Plaintiff establishes a *prima facie* case for his remaining claims and, therefore, analyzes those claims pursuant to the second and third steps of the *McDonnell Douglas* framework.

Defendant's burden of showing a legitimate, non-discriminatory reason for its actions is merely "one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citations omitted). Defendant's legitimate non-discriminatory reason for its actions is Plaintiff's "consistent failure to meet his professional obligations . . . ." (Doc. # 49 at 14; *see also* (Doc. # 49-1 at 68.)

Because Defendant has produced a legitimate nondiscriminatory reason for its actions, the burden shifts to Plaintiff to show "that the legitimate reason[s] offered by [D]efendant [was] not its true reason[], but [was] a pretext for discrimination." *Reeves*, 530 U.S. at 143.

To show pretext, a party may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment," *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988), and "a plaintiff's allegations alone will not defeat summary judgment," *Morgan*, 108 F.3d at 1324. Courts

consider the totality of the circumstances when considering whether pretext exists. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 885 (10th Cir. 2018). If the evidence as a whole reveals a "nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue," summary judgment is appropriate. *Reeves*, 530 U.S. at 148.

     1.    <u>Race and Gender Discrimination Claim</u>

With respect to Plaintiff's claims of race and gender discrimination, his evidence that Defendant's legitimate non-discriminatory reason for its actions is pretext for its discriminatory animus is that Defendant: (1) failed to act to prevent racial and sexual discrimination and did not provide Plaintiff with adequate support, thus creating intolerable working conditions (Doc. # 56. at 21–23); (2) assigned Plaintiff more difficult students (*id.* at 19); (3) did nothing about a comment from one of Plaintiff's colleagues regarding a third employee's "black card" (*id.* at 21); and (4) treated non-African American employees more favorably (*id.* at 20–21).

Plaintiff first contends that his sexual and racial harassment by students, combined with Defendant's failure to remedy such conduct, created intolerable working conditions and reveals its real motivation for its employment actions. However, as described above, *see* Discussion *supra* Section III.A.2., Defendant made numerous efforts to mitigate the student misconduct that Plaintiff specifically identified. Plaintiff alleges that his harassment at the hands of students got progressively worse in the 2016–2017 school year (Doc. # 56 at 4). However, as described in more detail below, the frequency with which Plaintiff reported student misconduct dropped from 29 incidents in 2015–2016 to 11 incidents in 2016–2017. *Compare* (Doc. # 60 at 10), *with*

(Doc. # 60 at 13). Unless something changed in Plaintiff's incident reporting, which he does not allege, the drop in reported student misconduct from 2015–2016 to 2016–2017 runs counter to the notion that Defendant failed to take action to address the student harassment.

Although Plaintiff presents evidence of student misconduct, he presents no evidence that Defendant failed to respond appropriately. Rather, Plaintiff's evidence shows merely that he was unhappy with the support he received. Nothing in Plaintiff's evidence suggests that Defendant's conduct to support Plaintiff, or the conditions that resulted from that support, establishes pretext. *See Campbell*, 892 F.3d at 1015, 1017–18 (school's suspension, detention, and transfer of students harassing a teacher were adequately supportive of the teacher as a means to prevent harassment).

Second, Plaintiff claims that he was assigned **more** difficult students **because** of his race. (Doc. # 56 at 18.) Although Plaintiff identifies facts regarding students with behavioral difficulties being in his class, he presents no evidence—outside of his own subjective belief of Defendant's discriminatory motivation regarding which students were placed into his class—of a causal connection between particular students being assigned to his class and his race, gender, or sexual orientation. In 2015–2016 Plaintiff reported 29 incidents of student misconduct; one other teacher reported more incidents that year. (Doc. # 60 at 10.) By contrast, in 2016–2017 Plaintiff reported 11 incidents of misconduct; nine teachers reported more incidents that year. (*Id.* at 13.) Even assuming that (1) all teachers have the same criteria for reporting student misconduct, (2) teachers report with the same frequency given similar student conduct, and (3) reporting is an accurate measure of students being more difficult, Plaintiff fails to present

evidence that even remotely suggests that he was assigned particular students **because** of his race. Absent such evidence, Plaintiff has not established that Defendant's legitimate reason for its actions was pretext for discriminatory animus. *Nielander*, 582 F.3d at 1165.

Third, Plaintiff indicates that he heard one of his colleagues say that another African American teacher at the school should have his "black card" taken away because he could not handle unruly students. (Doc. # 39 at 8.) Plaintiff alleges that this comment reaffirmed his belief about how Defendant perceived African American teachers. (Doc. # 56 at 21.)

Plaintiff fails to direct the Court to any materials in the record that support the contention that the statement was made by his colleague with discriminatory animus, or that Defendant adopted the position of Plaintiff's colleague. Rather, the record shows that Plaintiff did not even know whether his colleague's statement was about race.[5] (Doc. # 49-1 at 48.) A statement reflecting personal belief, when made by an employee not involved in an employment action, does not satisfy Plaintiff's burden of production in showing Defendant's discriminatory animus was the actual reason for its employment actions. *Merritt v. Tellabs Operations, Inc.*, 222 F. App'x 679 (10th Cir. 2007); *see also Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) ("[S]tray racial comments should typically not be admitted unless the plaintiff can link them to personnel decisions or the individuals making those decisions."). Furthermore, Plaintiff's subjective beliefs about his colleague's comment and whether or not it is a position

---

[5] In response to Defendant's deposition question, "And do you believe that [the black card comment] was said to you because of your race?" Plaintiff responded, "I don't know – I just know she [Plaintiff's colleague] was describing another teacher." (Doc. # 49-1 at 48.)

adopted by Defendant is insufficient to demonstrate pretext. *See Fuller v. Dep't of Children & Families*, 805 F. App'x 601, 606 (10th Cir. 2020) (plaintiff's subjective belief was insufficient to establish pretext).

Fourth, Plaintiff argues that his non-African American colleagues were treated more favorably than he was. (Doc. # 56 at 20–21.) Specifically, Plaintiff argues that denial of his HLB request was motivated by his race because a non-African American teacher, Ms. Corcoran, had her HLB request approved. (*Id.*) On November 17, 2016, Plaintiff requested reimbursement from the HLB for injuries sustained on November 5, 2015. (Doc. # 49-1 at 35–36.) In December 2016, Defendant denied Plaintiff's HLB request. (*Id.* at 38.) The denial letter sent to Plaintiff states that, "[b]ased on the **timeline** of your request, the committee determined that they will not approve your request for [HLB] days." (*Id.*) (emphasis added).

As a legitimate nondiscriminatory reason for denying Plaintiff's HLB request, Defendant proffers that, "[Plaintiff's] request for reimbursement from the Employee [HLB] . . . was denied . . . due to the year-long delay between [Plaintiff's] injuries/recovery and the request for time off." (Doc. # 49 at 3.) Plaintiff correctly asserts that no specific language in the letter states that it was his delay in making his HLB request that was the basis for the denial. (Doc. # 56 at 24.) However, the absence of such specific language does not alone suggest Defendant's subterfuge: the timeline for the request was originally, and continues to be, the reason for Defendant's denial of Plaintiff's HLB request. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005) (pretext can be established if "the employer has changed its explanation under circumstances that suggest dishonesty or bad faith."). Plaintiff presents no

evidence of Defendant's discriminatory pretext in denying his HLB request other than his subjective belief that "[o]ther than race there was no reasonable or justifiable reason to deny [Plaintiff], and to award the [HLB] time off to Ms. Corcoran." (Doc. # 56 at 20–21.) Plaintiff's subjective beliefs are insufficient to establish pretext. *See Fuller*, 805 F. App'x at 606 (plaintiff's subjective belief was insufficient to establish pretext).

Plaintiff also argues that Article 25 of the Master Agreement—i.e., the collective bargaining agreement between teachers or their union and the board of a school district—contains no specific time limitation for when claims must be filed and that, therefore, denying a request based on timeliness is evidence of pretext. (Doc. # 56 at 24.)

However, an employer's employment action in the absence of a particular policy specifically approving such an action does not necessarily represent pretext. *See Tastan v. Los Alamos Nat'l Sec., LLC*, 809 F. App'x 498, 502–03 (10th Cir. 2020) (absence of a specific policy prohibiting conduct at issue was not pretext for a discriminatory motive when that conduct formed the basis of employer's adverse employment decision). "The relevant inquiry 'isn't to ask whether the employer's decision was wise, fair or correct, but whether [the employer] honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *Id.* at 503 (citing *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017)).

Plaintiff also argues that his being passed over for promotion is evidence of discriminatory animus. (Doc. # 56 at 21.) "Pretext can be inferred . . . from evidence that a plaintiff who was not promoted was **more qualified** than those employees who were

promoted," but "[e]vidence that a plaintiff is **as qualified** as another employee chosen for promotion over him or her does not raise a factual issue as to pretext." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (emphases added). Plaintiff fails, however, to direct the Court to any evidence in the record, and the Court can find none, that he was more qualified than the person who was promoted.

In summary, Plaintiff has failed to present evidence to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in" Defendant's decision-making "[such] that a reasonable factfinder could rationally find [its reasoning] unworthy of credence." *Morgan*, 108 F.3d at 1323. Plaintiff's failure to show adequate evidence that Defendant's legitimate non-discriminatory reason for its actions is pretextual means, therefore, that summary judgment is appropriate regarding Plaintiff's race/gender discrimination claim.

     2.    <u>ADA Discrimination Claim</u>

Plaintiff claims that Defendant discriminated against him because of his disability when it 1) denied his HLB request; 2) sent him a letter of reprimand for taking paid health leave; 3) nonrenewed his employment; and 4) accused him of abandoning his job. (Doc. # 56 at 23–24.) Defendant responds that it took these actions for the following non-discriminatory reasons: 1) delay in Plaintiff's HLB request (Doc. # 59 at 12); 2) to inform Plaintiff of the policy requirements of the Master Agreement for paid health leave documentation (Doc. # 49-1 at 90);[6] 3) Plaintiff's poor work performance (Doc. # 49 at 14); and Plaintiff's failure to communicate with Defendant or perform his work

---

[6] The contents of the letter make it clear that the non-discriminatory reason for sending the letter was to request documentation for future paid health leave and to inform Plaintiff of the Master Agreement policies requiring paid health leave documentation.

responsibilities (Doc. # 60 at 28–48). Plaintiff's evidence that Defendant's legitimate non-discriminatory reasons for its actions is pretext for its discriminatory animus is that Defendant 1) reprimanded Plaintiff for taking time off for doctor appointments; and 2) accused Plaintiff of abandoning his job when he was injured by a student. (Doc. # 56 at 23–24.)

After Plaintiff had taken some paid health leave early in the school year, Mr. Chavez sent him an email that summarized the paid health leave that he had taken so far that year, quoted the relevant Article of the Master Agreement controlling teachers' paid health leave, and stated, "If you must take any more paid health leave this year, I will need a doctor's note when you return." (Doc. # 49-1 at 90.) Besides the usual salutations, the letter says no more. (*Id.*) Plaintiff claims the email was a reprimand for taking too much time off. (Doc. # 56 at 23–24.)

However, the letter cannot reasonably be interpreted as a reprimand and it says nothing about taking too much time off. *See* (Doc. # 49-1 at 90). Besides his conclusory, and false, allegations about what the letter shows, Plaintiff makes no attempt to explain how the letter establishes that Defendant's reason for its employment actions was pretextual. The Court finds that the email's language and tone do not suggest that Defendant's proffered reason for its actions was pretext for discriminatory animus.

Plaintiff also argues that Defendant's accusation that he abandoned his job is evidence of discriminatory animus. (Doc. # 56 at 24, 26.) Following Plaintiff's nonrenewal discussion with Defendant in March 2017, Plaintiff was largely unresponsive to the School's management's communications and he frequently failed to fulfill his professional obligations. *See* (Doc. # 60 at 28–48). Plaintiff contends that he

was unable to continue with his job and took time off during April and May because of the student-inflicted eye injury he suffered in late April. (Doc. # 56-1 at 104.) Plaintiff was authorized for Work Injury Leave for April 27 and 28, 2017, and was given the following work restrictions: "limit reading close up and far away <1 minute at a time, then must have a [five-minute break]." (Doc. # 61 at 46.) Those restrictions were subsequently modified on May 5 and 12, 2017, to less than two minutes reading with a 7-minute break and the wearing of sunglasses at work. (*Id.*)

Plaintiff failed to communicate with the School's management and staff about the restrictions, which they claim could be easily accommodated. (*Id.*) Plaintiff also called in sick for 9 of the first 18 days of May, but despite numerous requests by the School's management and staff for him to enter his leave requests into the School's system for tracking leave, he failed to do so. (*Id.*) Accordingly, Mr. Chavez formed the genuine, well substantiated belief that Plaintiff had abandoned his job. (*Id.* at 7–8.) Plaintiff's evidence that being accused of job abandonment shows discriminatory animus is no more than his response to one of Defendant's interrogatories (Doc. # 56-1 at 105), which goes no further than his virtually identical conclusory statements in his Response to Defendant's Motion (Doc. # 56 at 24, 26).

Moreover, it is unlikely that any accusation of Plaintiff's job abandonment made after his non-renewal is evidence of Defendant's subterfuge for its legitimate non-discriminatory reason for Plaintiff's non-renewal. The eye injury that Plaintiff alleges led to his time off in April and May occurred on April 26, 2017 (*id.* at 5) which is more than one month **after** Plaintiff's non-renewal discussion with Defendant on March 13, 2017 (Doc. # 39 at 16).

Although Plaintiff has moved beyond his pleadings and Response in presenting evidence, he does no more than point to evidence in the record that makes the same subjective, belief-oriented conclusions he makes in his Response. *Compare* (Doc. # 56 at 24, 26), *with* (Doc. # 56-1 at 105). Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence, and "[u]nsubstantiated allegations carry no probative weight." *Bones*, 366 F.3d at 875 (citations omitted). In summary, Plaintiff fails to establish that Defendant's legitimate non-discriminatory reason for its actions is pretextual and, therefore, summary judgment is appropriate regarding Plaintiff's ADA discrimination claim.

3.    <u>Retaliation Claim</u>

Plaintiff claims that Defendant retaliated against him when it nonrenewed his employment. (Doc. # 56 at 27.) To reiterate, Defendant's legitimate, non-discriminatory reason for non-renewing Plaintiff's employment is his consistent failure to meet his professional obligations. (Doc. # 49 at 14.) Plaintiff asserts that Defendant's legitimate non-discriminatory reason for his non-renewal is pretextual because Defendant issued Plaintiff a memorandum of concern when he physically removed a student's sweatshirt hood. (Doc. # 56 at 26.)

In November 2016 Plaintiff allegedly physically removed the hood of a student's sweatshirt after the student failed to comply with Plaintiff's directions in class. *See* (Doc. # 49-1 at 86). Subsequently, Defendant issued Plaintiff a memorandum of concern regarding the incident. (*Id.*) The memorandum summarized the incident and

described the School's expectations regarding the handling of future student conduct problems.[7] (*Id.*)

Plaintiff fails to explain how the memorandum of concern shows that Defendant's stated reason for the nonrenewal of Plaintiff's employment is pretextual. Defendant's evidence for its employment actions, taken as a whole, reveals a legitimate "nondiscriminatory reason for [its] decision[s] . . . ." *Reeves*, 530 U.S. at 148. Moreover, "[P]laintiff [has] created," at best, "only a weak issue of fact as to whether the employer's reason [for its actions] was untrue"; therefore, summary judgment for Defendant regarding Plaintiff's claim of retaliation is appropriate. *See id.*

## IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. # 49) is GRANTED. The Clerk of the Court respectfully is DIRECTED to enter judgment in favor of Defendant and against Plaintiff.

DATED: July 23, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[7] Defendant states that he had removed students' hoods on their sweatshirts since starting to work with the Defendant and implies this was the first time he was sanctioned for doing so. (Doc. # 56 at 26.) However, because Plaintiff presents no evidence that the School was aware of previous instances of his conduct, an inference of discriminatory animus does not necessarily arise. *See Redmon v. Gen. Motors Co.*, No. 18-2087-DDC-KGG, 2019 WL 2393166, at *11 (D. Kan. June 6, 2019) (defendant's categorization of policy violation in one instance of conduct but not another "does not render [defendant's] proffered explanation unworthy of belief.").